**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GEORGE GUY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :      CIVIL ACTION NO. 13-7308 |
| | : |
| SUNOCO, INC., <u>et al.</u>, | : |
| | : |
| Defendants. | : |
| | : |
| | : |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2014, upon consideration
of the Motion of Defendants Sunoco, Inc. (R&M) and James Demes to Compel Arbitration and
to Dismiss the Complaint, and plaintiff's response thereto, if any, it is hereby ORDERED AND
DECREED that the motion is GRANTED.  It is further ORDERED that the Complaint is
DISMISSED with PREJUDICE.

BY THE COURT:

_____
, J.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

GEORGE GUY,                          :
                                     :
              Plaintiff,             :
                                     :
       v.                            :          CIVIL ACTION NO. 13-7308
                                     :
SUNOCO, INC., et al.,                :
                                     :
              Defendants.            :
                                     :
                                     :

### MOTION OF DEFENDANTS SUNOCO, INC. (R&M) AND JAMES DEMES
### TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT

       Defendants Sunoco, Inc. (R&M) (incorrectly identified as "Sunoco, Inc." in the caption and hereafter "Sunoco") and James Demes move this Court to compel arbitration of plaintiff's claims and to dismiss the Complaint in its entirety with prejudice.  Sunoco and Demes rely on the accompanying Memorandum of Law in support of their motion.

                                     Respectfully submitted,

Dated:  March 31, 2014               /s/ Kelly T. Kindig
                                     Daniel V. Johns, Esquire
                                     Kelly T. Kindig, Esquire
                                     I.D. Nos. 76203 and 203278

                                     *Attorneys for Defendants Sunoco, Inc.*
                                     *(R&M) and James Demes*

OF COUNSEL:
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| GEORGE GUY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 13-7308 |
| | : | |
| SUNOCO, INC., <u>et al.</u>, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW OF DEFENDANTS SUNOCO, INC. (R&M)
AND JAMES DEMES IN SUPPORT OF THEIR MOTION TO COMPEL
<u>ARBITRATION AND TO DISMISS THE COMPLAINT</u>**

**I.    <u>INTRODUCTION</u>**

This is an employment discrimination action brought by plaintiff George Guy

against Sunoco, Inc. (R&M) (incorrectly identified as "Sunoco, Inc." in the caption and hereafter

"Sunoco")[1] and James Demes.  Plaintiff asserts the following claims in the Complaint:

retaliation under Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e, <u>et</u> <u>seq.</u> ("Title VII")

and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951, <u>et</u> <u>seq.</u> ("PHRA")

(Counts I and III); and race discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981

(Count II).  Sunoco and Demes now move to compel arbitration of plaintiff's claims and to

dismiss the Complaint.  Plaintiff's claims are governed by an enforceable arbitration agreement

between the parties that provides for arbitration of all claims related to plaintiff's employment.

---

[1]     The caption also refers to Philadelphia Energy Solutions as a company under which
Sunoco does business. That entity, however, is not the entity that employed plaintiff at
the time of the events set forth in the Complaint, and is improperly named in this action.

Because all of plaintiff's claims are covered by this arbitration agreement, this Court should compel arbitration and dismiss the Complaint.

**II.    FACTS**

**A.    Plaintiff's Allegations**[2]

Plaintiff began working for Sunoco on December 16, 1975.  (Compl. at ¶ 3).  In 2008, plaintiff applied for a promotion, but did not receive it.  (Compl. at ¶ 5).  Plaintiff, who is black, believed that he was denied the promotion because of his race. (Compl. at ¶ 6).  As a result, he filed a complaint with Sunoco's internal compliance department, complaining of race discrimination.  (Compl. at ¶ 7).  Sunoco subsequently promoted plaintiff to a project manager position and paid him a higher salary retroactively to the date on which he would have been promoted had he been selected to receive the promotion.  (Compl. at ¶¶ 8, 10).  In or around December 2010, Demes, to whom plaintiff indirectly reported, demoted plaintiff from the project manager position to a contract administrator position.  (Compl. at ¶ 10).

In February 2011, plaintiff filed a charge of discrimination with the Pennsylvania Human Relations Commission.  (Compl. at ¶ 12).  Plaintiff alleges that, in March 2011, Demes issued him a negative performance evaluation.  (Compl. at ¶¶ 14, 18).  Plaintiff avers that Demes negatively reviewed his performance because of plaintiff's race and because plaintiff filed a charge of discrimination.  (Compl. at ¶ 19).

**B.    Sunoco's Employee Resolution in Action Program**

Sunoco maintains a mediation and arbitration program for all non-union employees, called the Sunoco Employee Resolution in Action ("ERA") Program, which

---

[2]    The facts cited from the Complaint in this section are accepted as true only for purposes of this motion.  Sunoco does not waive, and hereby preserves, any and all substantive and procedural defenses that may exist to the Complaint and plaintiff's allegations.

establishes a mandatory mediation and arbitration process for claims made by Sunoco employees

arising out of their employment with Sunoco.  (Declaration of Carol E. Monaghan ("Monaghan

Decl."), attached as Exhibit 1, at ¶ 2; 2007 Version of the ERA Handbook ("2007 ERA

Handbook"), attached to Monaghan Decl., Ex. 1, as Exhibit A, at 9-17; 2008 Version of the ERA

Handbook ("2008 ERA Handbook"), attached to Monaghan Decl., Ex. 1, as Exhibit B, at 9-17).

The ERA Program has been in effect since May 1, 2004.  (Monaghan Decl., Ex. 1, at ¶ 5).  The

terms of the ERA Program are set forth, in plain language, in a booklet that was distributed to all

employees and is available to all employees on Sunoco's corporate intranet.  (Monaghan Decl.,

Ex. 1, at ¶ 2).  At all times after the ERA Program went into effect, plaintiff, as a non-union

employee, was subject to its terms.  (Id. at ¶ 7).

When the ERA Program went into effect in 2004, Sunoco notified employees via

email of the institution of the program.  (Monaghan Decl., Ex. 1, at ¶ 8; April 29, 2004 Email

Notice, attached to Monaghan Decl., Ex. 1, as Exhibit C).  The email notified employees that the

ERA Program booklet would be distributed to all employees, and it also referred employees to

the corporate intranet, where the booklet was posted.  (Monaghan Decl., Ex. 1, at ¶ 9).  Sunoco

also held overview and training sessions for employees throughout 2004 to educate employees

about the new program.  (Monaghan Decl., Ex. 1, at ¶ 10; April 29, 2004 Email Notice, Ex. C).

Plaintiff attended one such session about the ERA Program in September 2004.  (Monaghan

Decl., Ex. 1, at ¶ 11; Training Sign-in Sheet, attached to Monaghan Decl., Ex. 1, as Exhibit D).

In June 2007, Sunoco again notified all employees of the ERA Program in

connection with some minor modifications made to the program that did not substantively

change the program.  (Monaghan Decl., Ex. 1, at ¶ 12; June 7, 2007 Email Notice, attached to

Monaghan Decl., Ex. 1, as Exhibit E).[3]  The email, which was sent to all employees whose names appeared on a customized email distribution list, including plaintiff, contained a link to the ERA Program booklet on Sunoco's corporate intranet site, Sunoco@Work.  (Monaghan Decl., Ex. 1, at ¶ 13; June 7, 2007 Email Notice, Ex. E; Email Distribution List, attached to Monaghan Decl., Ex. 1, as Exhibit F).  Because plaintiff was subject to the ERA Program and his name appeared on the distribution list, plaintiff received this email, the form of which is the same form that went to all employees.  (Id. at ¶ 13; June 7, 2007 Email Notice, Ex. E; Email Distribution List, Ex. F).

The ERA Program defines its broad coverage in the following plain language:

**Who is Covered?**

All applicants as well as non-represented employees and eligible former employees (ex-employees that were employed by the Company while the program was in effect) are covered under the ERA Program.

(2007 ERA Handbook, Ex. A at 5; 2008 ERA Handbook, Ex. B at 5).  The ERA Program further explains that "[a]ny reference in this ERA Program to 'you' or to 'employee' or 'employees' will be a reference to you[.]"  (2007 ERA Handbook, Ex. A at 5; 2008 ERA Handbook, Ex. B at 5).

On the first page of the booklet and in bold text, the ERA Program explicitly states that agreement to the ERA is an express condition of employment and that, by continuing employment with Sunoco, an employee knowingly and voluntarily agrees to its terms, including the mandatory arbitration requirement:

**If . . . an employee . . . continues his or her employment with the Company, after the effective date of the ERA Program, the . . . employee and the Company agree to all provisions of the**

---

[3]  Full names (except for first and last initials) and identifying information have been redacted from all exhibits to protect employees' identities.

> **ERA Program.  This includes the requirement that any legal issue not resolved through the Open Door Phase, the Internal Conference Phase or the Mediation Phase be submitted to final and binding arbitration rather than through the courts or to a jury.  This agreement covers any workplace matter including claims of discrimination based on race, national origin, ancestry, gender, religion, age or disability under any federal, state, or local civil rights statute.**

(2008 ERA Handbook, Ex. B at 3; <u>see also</u> 2007 ERA Handbook, Ex. A at 3).[4]

In layman's terms, the ERA Program also walks employees through the process of mediation and arbitration.  (2007 ERA Handbook, Ex. A at 9-17; 2008 ERA Handbook, Ex. B at 9-17).  Throughout the booklet, Sunoco reminds employees that these steps are mandatory, as evidenced by the following statements:

- ". . . the employee and the Company agree to all provisions of the ERA Program[, including] the **requirement** that any legal issue not resolved through the Open Door Phase, the Internal Conference Phase or the Mediation Phase **be submitted to final and binding arbitration rather than through the courts or to a jury**."  (2008 ERA Handbook, Ex. B at 3 (emphasis added); <u>see also</u> 2007 ERA Handbook, Ex. A at 3 (emphasis added)).

- "Any legal issue not resolved through the Open Door Phase, the Internal Conference Phase or the Mediation Phase **must be submitted to final and binding arbitration rather than through the courts or to a jury**."  (2007 ERA Handbook, Ex. A at 10 (emphasis added); 2008 ERA Handbook, Ex. B at 10 (emphasis added)).

- "Except as otherwise limited herein, any and all employment-related legal disputes, controversies or claims arising out of, or relating to an employee's . . . employment . . . with the Company **shall be settled exclusively by final and binding arbitration**[.]" (2008 ERA Handbook, Ex. B at 12 (emphasis added); 2007 ERA Handbook, Ex. A at 12 (emphasis added)).

---

[4]     The 2008 booklet makes clear that references to the "Company" mean "Sunoco, Inc. [its] subsidiaries, affiliates and all other related entities (but excluding Sunoco Partners LLC and [its] subsidiaries), its directors, officers, employees, agents, benefit plans, the benefit plans' sponsors, fiduciaries, administrators, and all successors and assigns of any of them in any capacity."  (2008 ERA Handbook, Ex. B at 3, 5).  Because Sunoco, Inc. (R&M) is a subsidiary of Sunoco, Inc., references to the "Company" mean references to Sunoco, Inc. (R&M).  (Monaghan Decl., Ex. 1, at ¶ 1).

- "All claims arising under federal, state or local statutory or common law **shall be subject to arbitration**." (2007 ERA Handbook, Ex. A at 12 (emphasis added); 2008 ERA Handbook, Ex. B at 12 (emphasis added)).

- "Any legal issue not resolved through the Open Door Phase or the Internal Conference Phase **must be submitted** to mediation before it is submitted to final and binding arbitration. After mediation, **rather than proceed through the courts or to a jury, arbitration is the final and binding recourse for the resolution of any legal issue**." (2007 ERA Handbook, Ex. A at 13 (emphasis added); 2008 ERA Handbook, Ex. B at 13 (emphasis added)).

- "The ERA Program and its Rules and Procedures **preclude litigation or re-litigation in any federal, state or local court** by either the Company or its employees of any claim that has been, is being, will be, or could or should have been arbitrated under the ERA Program." (2007 ERA Handbook, Ex. A at 16 (emphasis added); 2008 ERA Handbook, Ex. B at 16 (emphasis added)).

- "Failure on the part of the employee to exhaust the Arbitration Phase under [the Company] ERA Program within the time limits specified **shall be a complete defense** to Company liability on any claim in any court of law." (2007 ERA Handbook, Ex. A at 16 (emphasis added); 2008 ERA Handbook, Ex. B at 16 (emphasis added)).

As the bolded language above demonstrates, the ERA document makes clear that, in agreeing to arbitrate, the employee is giving up the right to proceed to a jury trial.[5]

Further, the ERA Program states that claims covered by the ERA include ***all*** employment claims. (2007 ERA Handbook, Ex. A at 3, 12; 2008 ERA Handbook, Ex. B at 3, 12). By way of example, the booklet lists of the following claims:

> [C]laims arising under Title VII of the Civil Rights Act of 1964, Sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, including the amendments of the Civil Rights Act of 1991, . . . and any and all claims under federal, state and local laws against discrimination[.]

(2007 ERA Handbook, Ex. A at 3, 12; 2008 ERA Handbook, Ex. B at 3, 12).[6]

---

[5]   The ERA Program expressly notifies employees that they are not prohibited from filing claims with the appropriate federal, state or local human or civil rights commission. (2007 ERA Handbook, Ex. A at 5; 2008 ERA Handbook, Ex. B at 5).

Instead of submitting his claims to the ERA Program and proceeding to arbitration as he was required to do, plaintiff filed a complaint in this Court on December 13, 2013, alleging race discrimination and retaliation.  Despite having been notified of his agreement to the binding arbitration agreement, plaintiff has refused to withdraw the complaint.

## III.   ARGUMENT

### A.   Standard of Review

In the Third Circuit, a motion to compel arbitration is viewed as a summary judgment motion if the parties contest the making of the agreement.  Lepera v. ITT Corp., No. 97-1461, 1997 U.S. Dist. LEXIS 12328, at *7-8 (E.D. Pa. Aug. 12, 1997).  "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."  Id. at *8.  Moreover, if all the claims involved in the actions are arbitrable, a court may dismiss the action in its entirety.  Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 179 (3d Cir. 1998).

### B.   This Court Should Compel Arbitration of Plaintiff's Claims and Dismiss the Complaint.

#### 1.   The Federal Arbitration Act Governs Plaintiff's Claims.

Federal law favors arbitration as an alternative dispute resolution method.  Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Hamilton v. Travelers Prop. & Cas. Corp., No. 01-11, 2001 U.S. Dist. LEXIS 6123, at *6 (E.D. Pa. May 11, 2001).

---

(...continued)

[6]   The ERA Program clearly states that arbitration shall apply to all employment-related disputes, "whether asserted against the Company and/or against any employee, officer, alleged agent, director or affiliate company."  (2007 ERA Handbook, Ex. A at 12; 2008 ERA Handbook, Ex. B at 12).  While the ERA Program excludes claims against an individual manager "that do not involve conduct within the scope of the manager's employment" (2007 ERA Handbook, Ex. A at 6; 2008 ERA Handbook, Ex. B at 6), plaintiff has not alleged that Demes acted outside the scope of his employment.

The Federal Arbitration Act, 9 U.S.C. § 2 ("FAA"), was enacted "to reverse the longstanding

judicial hostility to arbitration agreements that had existed at English common law and had been

adopted by American courts, and to place arbitration agreements upon the same footing as other

contracts."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991); see also AT&T

Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1744 (2011) (observing that the FAA "makes

agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract'") (quoting 9 U.S.C. § 2).  The U.S. Supreme

Court explicitly has held that arbitration agreements covering employment-related claims are

governed by the FAA.  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001).

        Before ordering arbitration pursuant to the FAA, the district court must determine:

(1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific

dispute falls within the scope of the agreement.  John Hancock Mut. Life Ins. Co. v. Olick, 151

F.3d 132, 137 (3d Cir. 1998).  "Arbitration is a matter of contract between the parties and the

determination of whether the agreement is enforceable is made under Pennsylvania law."  Wetzel

v. Baldwin Hardware Corp., No. 98-3257, 1999 U.S. Dist. LEXIS 1227, at *8 (E.D. Pa. Jan. 29,

1999).  Here, as discussed more fully below, the parties entered into a valid mediation and

arbitration agreement that is binding upon plaintiff, and plaintiff's claims fall squarely within the

scope of that agreement.  Accordingly, this Court should compel arbitration of plaintiff's claims

and dismiss the Complaint.

> **2.      The Parties Have Entered into a Valid Arbitration Agreement that Is
> Binding upon Plaintiff.**

        The ERA Program is a valid and binding mediation and arbitration agreement

between plaintiff and Sunoco that Sunoco may invoke and enforce against plaintiff.  To be valid

and enforceable under Pennsylvania law, an arbitration agreement must meet the general

requirements of a contract, i.e., be the result of an offer and acceptance that is supported by

adequate consideration.  See Wetzel, 1999 U.S. Dist. LEXIS 1227, at *8.

Under Pennsylvania law, an employee handbook, policy, or, as in this case, the

ERA Program, will be considered a contract if the employer states its intent to be bound:

> Importantly, we do not mean to say that an employer cannot create
> a legally binding "contract" with his employees via an employment
> handbook.  It is for the court to interpret the handbook to discern
> whether it contains evidence of the employer's intention to be
> legally bound . . . A reasonable employee may be presumed to
> regard such handbooks as having legally binding contractual
> significance when the handbook, or oral representations about the
> handbook, in some way clearly state that it is to have such effect.

Id. (quoting Klages v. Sperry Corp., No. 83-3295, 1986 U.S. Dist. LEXIS 23098, at *7 (E.D. Pa.

July 8, 1986)).  Significantly, "[s]ignatures are not dispositive evidence of contractual intent.

Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 584 (3d Cir. 2009).  "As a general rule,

signatures are not required for a binding contract unless such signing is expressly required by

law or by the intent of the parties."  Commerce Bank/Pa. v. First Union Nat'l Bank, 911 A.2d

133, 145 (Pa. Super. Ct. 2006); see also Roadway Express, Inc. v. Gen. Teamsters, Chauffeurs

and Helpers Union, Local 249, 330 F.2d 859, 863 (3d Cir. 1964) ("[T]he fact that the proposed

written agreement was not signed did not demonstrate as a matter of law that there was no

contract.").  Moreover, the FAA does not require that the arbitration agreement be signed by all

parties; it only requires that the arbitration clause be "written."  9 U.S.C. §§ 2 and 4.

Courts in this district applying Pennsylvania law have routinely enforced

unsigned arbitration agreements when the parties have otherwise manifested their intent to be

bound by them.  More specifically, as relevant in this case, courts agree that "an employee's

decision to continue working with an employer for a substantial period of time after the

imposition of a new policy, demonstrates acceptance of its terms."  Venuto v. Ins. Co. of N. Am.,

No. 98-96, 1998 U.S. Dist. LEXIS 11050, at *5 (E.D. Pa. July 22, 1998).  For instance, in

Hamilton, the plaintiff continued to work for his employer for approximately two years after

being made aware of (although not acknowledging by signing) a future implementation of an

employee arbitration policy.  Hamilton, 2001 U.S. Dist. LEXIS 6123, at *6-7.  Nonetheless, he

filed a complaint in the Eastern District of Pennsylvania alleging claims of wrongful termination

as well as violations of Title VII and the PHRA.  Id. at *3-4.  The court held that the plaintiff's

continued employment demonstrated his acceptance of the arbitration agreement.  Id. at *6-7.

Because all of his claims were arbitrable, the court dismissed the lawsuit.  Id. at *9.

Similarly, in Venuto, the court concluded that the employer's arbitration policy,

which was not signed by the employee, was a binding agreement to arbitrate.  Venuto, 1998 U.S.

Dist. LEXIS 11050, at *10-15.  In reaching this result, the Venuto court rejected the plaintiff's

argument that the arbitration policy lacked the requisite mutuality of assent required to constitute

a legally enforceable contract, a contention she based on the grounds that the employer

unilaterally issued the policy and she did not sign or otherwise explicitly agree to it.  Id. at *2-3.

The court ruled that "[t]he FAA requires an agreement to be in writing; 'it does not require that

the writing be signed by the parties.'"  Id. at *4 (quoting Nghiem v. NEC Elec., Inc., 25 F.3d

1437, 1439 (9th Cir. 1994) and citing 9 U.S.C. § 2); see Gutman v. Baldwin Corp., No. 02-7971,

2002 U.S. Dist. LEXIS 23588, at *11-12 (E.D. Pa. Nov. 25, 2002) (enforcing arbitration

agreement in employment context and dismissing complaint because the plaintiff accepted the

agreement by continuing his employment with the defendants for five years afterwards; the

plaintiff's signature on the agreement did not amount to acceptance of the offer but evidenced

the defendants' notice of the offer); Wilson v. Darden Rests., Inc., No. 99-5020, 2000 U.S. Dist.

LEXIS 1274, at *10-11 (E.D. Pa. Feb. 11, 2000) (enforcing arbitration agreement in employment

context when the plaintiff was given a copy of the arbitration policy, watched a video describing the arbitration policy, and continued to work for two months afterwards); Wetzel, 1999 U.S. Dist. LEXIS 1227, at *8-13 (finding a valid and enforceable arbitration agreement in the employment context where the plaintiff received a copy of the arbitration policy and accompanying explanatory memorandum and continued working for his employer for nearly a year afterwards).

Moreover, courts in this district have agreed that continued employment is adequate consideration for a mandatory arbitration agreement. Gutman, 2002 U.S. Dist. LEXIS 23588, at *12 (stating "continued employment fulfills the consideration requirement under Pennsylvania law"); Hamilton, 2001 U.S. Dist. LEXIS 6123, at *6-7 (same); Wilson, 2000 U.S. Dist. LEXIS 1274, at *11 (same); Wetzel, 1999 U.S. Dist. LEXIS 1227, at *10 (same).

Applying these principles here, plaintiff's claims must be submitted to the ERA Program because he was made aware of the program, received training on it and agreed to participate in it by continuing his employment. As demonstrated above, there is no requirement that the ERA Program be signed to be enforceable. Plaintiff's continued employment since 2004 (and, at the very latest 2007, when he received and did not question the binding nature of the program) is more than sufficient to establish acceptance of and consideration for the ERA program. Plaintiff also cannot dispute that he was among the class of covered employees who received the 2007 update to the program and was advised by his employer to "review" it. (Monaghan Decl., Ex. 1, at ¶¶ 12-13; June 7, 2007 Email Notice, Ex. E; Email Distribution List, Ex. F).[7]

---

[7]     To the extent plaintiff relies on Hudyka v. Sunoco, Inc., 474 F. Supp. 2d 712 (E.D. Pa. 2007), to argue that the ERA Program is unenforceable, the facts of Hudyka are not squarely on point. Hudyka involved a challenge to the enforceability of the 2004 version

(continued...)

Thus, the ERA Program is an enforceable mediation and arbitration agreement and is binding on plaintiff.

### 3.   Plaintiff's Claims Fall Within The Scope Of The Arbitration Policy.

"[T]he policy of the Arbitration Act requires a liberal reading of arbitration agreements." Moses H. Cone Mem. Hosp., 460 U.S. at 23.  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id.; see also Varallo v. Elkins Park Hosp., No. 02-1944, 2003 U.S. App. LEXIS 6561, at *5 (3d Cir. Mar. 4, 2004) (finding that the plaintiff's failure to rehire claim was covered by an arbitration agreement where she agreed to submit any and all claims and disputes relating to her employment or termination from employment).

Here, plaintiff asserts claims for race discrimination and retaliation under federal and state law arising out of his employment with Sunoco.  Sunoco's ERA program expressly states that it covers "all claims and controversies arising out of [plaintiff's] employment, including those relating to an employee's discharge."  (2007 ERA Handbook, Ex. A at 5, 17; 2008 ERA Handbook, Ex. B at 5, 17).  In fact, the ERA Program lists discrimination and unlawful retaliation claims as potential disputes covered by its provisions. (2007 ERA Handbook, Ex. A at 12; 2008 ERA Handbook, Ex. B at 12).  Because plaintiff's claims fall

---

(...continued)

of the program that is not at issue in this case.  474 F. Supp. 2d at 714-15.  The court also found that Sunoco had not sufficiently demonstrated that the plaintiff had actually received the program.  Id. at 716.  In contrast, plaintiff here cannot dispute his knowledge of the program.  Finally, the court found that the 2004 version did not clearly advise the plaintiff that arbitration was mandatory.  Id. at 717.  The 2007 and 2008 versions, however, make abundantly clear through multiple references that a jury is not an option. (2007 ERA Handbook, Ex. A at 3, 10, 13).  Thus, this Court should decline to find Hudyka persuasive.

directly within the scope of the ERA Program, they must be arbitrated under the ERA Program and the Complaint dismissed.  See Gilmer, 500 U.S. at 23 (enforcing an arbitration agreement where the clause provided that the parties "agree[d] to arbitrate any dispute, claim or controversy" and holding that, by agreeing to that provision, the plaintiff had waived his right to bring an ADEA claim in a judicial forum); Keisel v. Lehigh Valley Eye Ctr., P.C., No. 05-4796, 2006 U.S. Dist LEXIS 47486, at *18-19 (E.D. Pa. July 12, 2006) (finding it was "clear that the arbitration agreement [covered] the instant dispute" where the agreement stated that "any controversy or disagreement between the parties to [the] Agreement shall be determined by arbitration") (internal quotations omitted).

## IV.     **CONCLUSION**

For the reasons set forth above, Sunoco respectfully requests that this Court compel the arbitration of plaintiff's claims and dismiss the Complaint in its entirety with prejudice.

Respectfully submitted,


Dated:  March 31, 2014                              /s/ Kelly T. Kindig
                                                     Daniel V. Johns, Esquire
                                                     Kelly T. Kindig, Esquire
                                                     I.D. Nos. 76203 and 203278

                                                     *Attorneys for Defendants Sunoco, Inc.*
                                                     *(R&M) and James Demes*


OF COUNSEL:
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500

## <u>CERTIFICATE OF SERVICE</u>

I, Kelly T. Kindig, hereby certify that, on this date, a true and correct copy of the foregoing Motion of Defendants Sunoco, Inc. (R&M) and James Demes to Compel Arbitration and to Dismiss the Complaint has been filed electronically and is available for viewing and downloading from the ECF system.


Dated:  March 31, 2014                              /s/ Kelly T. Kindig
                                                     Kelly T. Kindig